UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 23-CR-10140-IT |
| ) | |
| VINCENT LAMBERT ) | |

## VINCENT LAMBERT'S SENTENCING MEMORANDUM

Mr. Lambert faces sentencing for three counts of distribution and possession with intent to distribute methamphetamine into the community, unquestionably a serious criminal offense. He faces a significant period of incarceration for his commission of these crimes and takes full responsibility. For the reasons outlined in this memorandum, he asks that the Court sentence him to a period of 132 months of custody followed by 60 months of supervised release.

Mr. Lambert's background circumstances provide support for the defense's requested sentence. From an early age, Mr. Lambert suffered physical, verbal, and emotional abuse at the hands of many of the people in his life who were supposed to care for him. As he grew older, he turned to substances to cope with many of the stresses in his life. He struggled with substance use disorder from his teen years onward. This substance use and dependance continued into his adult years, and only grew worse as he turned farther away from the support of doctors, medical support, and therapy, and instead deeper into addiction. His criminal history reflects that of a drug dealer but also an addict, only now facing his first federal conviction for distribution of methamphetamine. This constant and persistent addiction led to his criminal behavior in this case. Mr. Lambert now faces a significant sentence for his criminal actions in this case – at the low-end of the parties' range, a sentence of more than three times any sentence he has served in the past.

It is against that backdrop that Vincent Lambert now stands before this Court, having pled guilty to a three-count indictment charging separate violations of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) (Distribution and Possession with Intent to Distribute Methamphetamine). In light of Mr. Lambert's personal history, the purposes of sentencing, and the mitigating circumstances surrounding his conduct, he respectfully requests that this Court impose a sentence of 132 months in this case, the low-end of the parties' plea agreement range. A sentence of 132 months (11 years) is an appropriate balancing of the seriousness of the drug offense and how Mr. Lambert's conduct in selling drugs impacts the community, as well as the personal history of Mr. Lambert himself. A sentence of 11 years in federal custody is consistent with the factors set forth in 18 U.S.C. § 3553(a) and is sufficient but not greater than necessary. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 268–69 (2005); *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

Mr. Lambert recognizes that his actions here were serious: while he was an addict selling drugs to support his constant habit, it is because of high the drug weights that the sentencing range in this case is so substantial. By pleading guilty, he has demonstrated that he wants to accept responsibility and to move forward. We ask that the Court consider the appropriate punishment against this backdrop, namely Mr. Lambert's extraordinarily difficult past and his eagerness to seek treatment at this time. This memorandum is accompanied by a letter of support from his mother, Exhibit A. Mr. Lambert's letter to the Court is filed as Exhibit B.

I.     Childhood and Family Life

This Court frequently hears of childhood trauma and very difficult circumstances. Vincent Lambert's childhood description is of abuse is shocking in its duration, cruelty, and depravity. ▮





4

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████

His relationships with the adults in his life remain fractured, and his father has since died. Mr. Lambert and his mother have slowly worked on their relationship in recent years. Mr. Lambert considers his mother a source of support and speaks with her regularly while in custody. He anticipates having his mother as a source of continued support going forward to his anticipated BOP sentence and in his return to the community. His mother wants to see him sober and healthy. Mr. Lambert has a similar goal:

> I don't wish to insult the court by claiming to be a victim in this situation. With that being said, I would like to inform you of some things from my past and speak a little bit more about myself…I have suffered from and been diagnosed with bipolar and obsessive-compulsive disorder, unfortunately it has been like this for me my whole life. I was actively being treated for my mental illnesses when I was a child, but I stopped taking my medication and going to treatment when I turned 18 years old. Since then, I became very addicted to meth and other drugs, I could not imagine life without it. When I began taking these drugs it felt as though I could not stop. Now that I am older, I can say those were poor decisions on my end, the addiction I believe has impacted my reputation with the law…The same kind of guilt I had here with my addiction and my run in with the law has transferred over into being a guilt of letting my family down over the years. I know now that positive support from my family is going to be the start of my recovery from my addiction along with my self-awareness in my actions…I am now in a good place mentally and I have a positive relationship with family including my mother. My hopes in writing you this letter today is to show my improvement and also take accountability for my actions. I would also like to return home soon to start a new sober life and be with my family. I feel like I lost a part of myself and lots of time in my life. What matters the most to me now is what I chose to do with the rest of my life. *Exhibit B*, letter from Mr. Vincent.

II.     Substance Use

Mr. Lambert has a long history of substance use disorder, starting with marijuana use at

age ten or eleven and alcohol consumption at around age twelve. From his teenage years until his most recent incarceration, Mr. Lambert wrestled with misuse and addiction to a host of drugs, including cocaine, heroin, fentanyl, methamphetamine, phencyclidine (PCP), MDMA, and benzodiazepine. Between ages sixteen and nineteen, his focus was on cocaine, heroin, and methamphetamine. In his thirties, fentanyl replaced heroin. Around the time he was arrested, he was also using PCP, MDMA, and benzodiazepine. He has overdosed at least five times, all in his thirties. See PSR ¶82-85. To say it bluntly – he suffers from profound drug addiction and requires intensive dual diagnosis treatment.

     Mr. Lambert has undergone sporadic treatment for his substance use disorder in the past—through Granite House, the Gavin Foundation, Faith House in Dorchester, and Cavalry House in Dorchester. These efforts were often cut short by relapse and a failure to follow up, as well as time spent in and out of custody, and homelessness. While in pretrial custody Mr. Lambert has sought programming relating to substance abuse treatment. He has expressed strong interest in participating in such programming during his imprisonment and would be an obvious candidate for recommendation into the Bureau of Prison's Residential Drug Abuse Program (RDAP).

     III.    Educational and Work History

     Mr. Lambert struggled academically and social in school as a child and teenager. By his own description, he had a reputation as a "troublemaker." At least one therapist noted that Mr. Lambert wrestled with "a lot of angry feelings" toward his father and that his "difficulty verbalizing [those feelings]" meant that they were "consistently being acted out." He was frequently removed from class for having difficulty concentrating and for generally being disruptive. Mr. Lambert briefly attended Norwood High School but did not finish due to the

6

many instabilities he faced at home and in group homes. He did, however, earn his GED through a Tufts program based in Somerville. PSR ¶ 86. Mr. Lambert worked for his family's grocery chain - Lambert's - off and on in his early adult years. At other times, Mr. Lambert has worked as a security guard at Harvard's Fog Art Museum, as a bookkeeper for a private business owner, as a service worker at known chains like Coldstone Creamery and Legal Seafood, and as staff at a furniture store in Norwood. PSR ¶ 87. He has not, however, been consistently employed.

Supervision which addresses vocational training will be an important part of the rehabilitative phase of the sentence for Mr. Lambert.

IV.     Nature and Circumstances of This Offense

The nature of the offense is straightforward and described in more detail in the presentence report at ¶¶ 7-13. Mr. Lambert sold crystal meth to a cooperator working with the government on three separate occasions in February, March, and April of 2023. PSR ¶ 9-11. The sales to the confidential informant were for approximately 28 grams, 110 grams, and 83 grams of actual meth. Id. Police executed a search warrant of Mr. Lambert's bedroom in a rooming house and located the bulk of the drugs in this case, not just the meth sold, but also other drugs. PSR ¶ 13. Those drugs included Mr. Lambert's own stash, but also drugs he agreed to hold for others. He accepts responsibility for the entire amount.

Mr. Lambert has struggled with addiction since he was a teenager. This is plain from a reading of his criminal history and prior arrests as outlined in the Presentence Report. Since age eighteen, his criminal history is littered with drug possession and possession with intent to sell arrests and some convictions, for which he served sentences of 9 months, 5 months, 30 days, 18 months (split), 1 year, with the most serious sentence at age 35 for 3.5-5 years imposed (including possession of a firearm in that instance). See PSR ¶¶ 35-37, 42-43, 45-47. This marks

his first federal charge. The bulk of these convictions and police contacts are indicative of the behavior of a chronic substance user. Here, Mr. Lambert's convictions expose him to a mandatory minimum 120-month sentence, and his guideline range is significantly higher than that both based on the drug weights and his designation as a "career offender." PSR ¶ 22, 28. The parties nevertheless propose a lower sentencing range of 132-188 for the Court's consideration. PSR ¶3.

      V.      <u>Sentencing Guidelines</u>

The parties agree that Mr. Lambert's total offense level under the Guidelines is 34. Mr. Lambert makes no legal objection to the Guideline range as calculated by Probation and instead requests a sentence of 132 months for the reasons described in this memorandum. While courts must continue to *consider* the sentencing guidelines, the Supreme Court has held that the Court may not presume that the guideline sentencing range is reasonable, and Congress has *required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 128 S.Ct. 558 (2007); *Gall v. United States*, 128 S.Ct. 586 (2007); *Rita v. United States,* 551 U.S. 338 (2007). The Court's decision in *Gall,* combined with its decisions in *Kimbrough* and *Rita* "makes clear that in the post-*Booker* world, district judges are empowered with considerable discretion in sentencing, as long as the sentence is generally reasonable and the court has followed the proper procedures." *United States v. Taylor,* 532 F.3d 68, 69 (1st Cir. 2008); The Court can properly depart from application of the career offender guidelines and impose a reasonable sentence based on a consideration of the 3553(a) factors. Here, a sentence that provides for a proportional increase in incarceration and takes into account Mr. Lambert's history, is consistent with the statutory requirements. Simply put, it is a significant sentence, far longer than any period Mr.

8

Lambert has served in his life, and no greater term is necessary to achieve the sentencing goals at issue in this case.

      VI.    <u>Additional Sentencing Goals and Appropriate Sentence</u>

The defendant's sentencing recommendation is admittedly a significant deviation from the guideline sentencing range, but nonetheless comports with the mandate of 18 U.S.C. §3553(a) to impose a sentence that is "sufficient but not greater than necessary" to achieve all the purposes of sentencing. The United States has entered into an agreement whereby it agrees that the proposed range more adequately reflects Mr. Lambert's conduct and history. Mr. Lambert asserts that, within that range, the 3553(a) factors provide support for a sentence of 132 months. The court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The sentence must also promote adequate deterrence, and protect the public from further crimes of the defendant. Finally, the sentence must provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

    (a)  Seriousness

This is a serious offense. Simply put, the drugs Mr. Lambert was engaged in selling are dangerous and destructive to the community. Because of the quantity, these charges carry a mandatory minimum sentence of 120 months of custody. Here, the parties propose a sentencing range of 132-188 months, followed by 5 years of supervised release in the community. The prison portion of the sentence addresses, primarily, isolation and the protection of the public.

The requested sentence of 11 years in prison adequately reflects the seriousness of this criminal conduct. There is no mistaking that a 132 month sentence is a stern and serious sentence. For this defendant, an additional 2-3 year sentence beyond the 11 years proposed will

not meaningfully add anything not adequately addressed by an 11-year sentence. The goals of punishment, isolation, and protection are addressed by a sentence of 132 months. It will be the responsibility of the conditions of supervised release to address the balance of the sentencing goals – rehabilitation.

(b) Deterrence & Protection

It is plain that a period of 11-years in federal prison will serve as a deterrent for Mr. Lambert and others in his shoes. The 3553(a) factors support a <u>reasonable sentence</u> followed by structured supervised release to include drug treatment and aftercare support. Personal and general deterrence are both satisfied with a sentence of 132 months – the public's reaction to a sentence of 11 years for the conduct of possession and sale of drugs by a drug-addicted individual will be a significant deterrent. Simply put, Mr. Lambert does require incarceration for more than 11 years in order to satisfy this sentencing factor.

By the time he is released, Mr. Lambert will be in his fifties, making him statistically unlikely to reoffend. For that reason, a sentence of 132 months followed by supervision is adequate to protect the public from further crimes.

(c) Kinds of Sentences and Rehabilitation

Rehabilitation will be a key component of Mr. Lambert's future. Participation in the RDAP program is appropriate and applicable to Mr. Lambert, and he asks for a judicial recommendation into the program while he is in BOP custody serving his sentence. Mr. Lambert has already started taking advantage of programming available pretrial, including courses in history and sociology. He hopes to find positive ways to fill his time while serving this sentence and prepare for this return to the community. However, the supervised release portion of the sentence will be where the bulk of his rehabilitation will take place, and conditions to support his

sobriety and mental health should be included.

## **CONCLUSION**

For the foregoing reasons, Mr. Lambert requests that he be sentenced to 132 months custody. This is sufficient, but not greater than necessary, to achieve the goals of sentencing. For this defendant, a sentence of 132 months is more than adequate to achieve each of the sentencing goals in this case.

VINCENT LAMBERT
By his attorney,

*/s/ Cara McNamara*
Cara McNamara
BBO 712096
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 10, 2024

*/s/ Cara McNamara*
Cara McNamara